**CIVIL RIGHTS COMPLAINT-28 U.S.C §1350 VIENNA CONVENTION VIOLATION**

IN THE UNITED STATES DISTRICT CURT
FOR THE DISTRICT OF OREGON

FILED 6 JUN '11 15:43 USDC-ORP

| | |
|---|---|
| MILAUDI, KARBOAU,<br>*Plaintiff,*<br><br>v<br><br>The City of Portland and County of Multnomah Oregon; Michael Reese Portland Police Chief; Denial, Stanton, Multnomah County Sheriff; Michael, Schrank, Multnomah County District Attorney; Patrick, Callahan Multnomah County Assistant District Attorney; Jim Lawrence, Portland Police Officer; Three John Does Portland Police Officers One John Doe Portland Police Sergeant; Bill Jeffery, Multnomah County Probation Officer; sued in their Personal Individuals, and Official Capacities;<br>    *Defendants.* | Case No**CV '11 - - 679 - HO**<br><br>CIVIL RIGHTS COMPLAINT<br><br>28 U.S.C §1350<br><br>VIENNA CONVENTION VIOLATILON<br><br>**Jury trial demanded** |

Plaintiff Milaudi Karboau ("Karboau"), currently detained by the United States Immigration & Custom Enforcement (U.S/I.C.E); Northwest Detention Center (NWDC), Tacoma, Washington seeks to bring this civil law suit action pursuant to the Alien Tort Claims Act, 28 U.S.C. §1350, against the above entitled defendants alleging violations of his rights under Article 36 of the Vienna Convention on Consular Relations. This civil action authorized by 28 U.S.C §1350 to redress the deprivation under Article 36 of the Vienna Convention on Consular Relations (Vienna Convention), Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261, a multilateral treaty. Plaintiff is a citizen of Morocco, emigrated to the United States in 1979.

**Statement of Claim**

1

**CIVIL RIGHTS COMPLAINT-28 U.S.C §1350 VIENNA CONVENTION VIOLATION**

On February 4, 2002, Plaintiff was arrested by the City of Portland Police Bureau (PPB) officers, for attempting to receive stolen property. During his arrest, detention and interrogation in the Police precinct by the defendants, Officer *James Lawrence*, and his colleagues Officers (John Does), and Sergeant, (John Does) of (PPB), he was never informed or advised of his right to Consular under Article 36 to the Vienna Convention on Consular Relations (*Vienna Convention*). After the interrogation the police Officers went to the Plaintiff's house searched the Plaintiff's house without his consent or warrant.

While Petitioner was setting in the Multnomah County Detention Center (MCDC) awaiting the indictment, the same (PPB) Officers want back again to the plaintiff's house on February 6, 2002, to the Plaintiff's house and searched the plaintiff's house for the second time without his consent or search warrant.

On February 7, 2002, Plaintiff was indicted and charged with the offenses of: (6) Counts of theft in first degree, (1) Count theft in third degree; (1) Count attempted theft in first degree; and (1) Count of identity theft (<u>Case No. 020230995</u>), and was released from custody on his own recognizance with April 9, 2002, date scheduled for his Court hearing.

Within 10 minutes after he was released from custody on February 7, 2002, and arrived home, Plaintiff heard a knock on his front door. When the Petitioner's wife *Asofitu Karboau* opened the door, she saw the next door neighbors Bob and Virginia Anderson's son, *David Anderson* who is a Portland Police Bureau (PPB).Sergeant, told the Plaintiff's wife that; *I want to speak to your fucking husband*. Bob and *Virginia* Anderson are the actual neighbors to the Plaintiff, together with their (PPB) son

2

## CIVIL RIGHTS COMPLAINT-28 U.S.C §1350 VIENNA CONVENTION VIOLATION

Sergeant Anderson who lives in Vancouver, Washington have a long two years history of an on-going bitter feud between the two neighbors. Since the Plaintiff and his family bought their house in August 2000, in the Park Rose neighborhood area next to the Anderson's home, they have became subjected to serious harassment, racial profiling, verbal and physical assault based on their rice, religion and nationalities.

When Plaintiff heard Sergeant Anderson yelling at his wife in the front door he went to see what was going on and Sergeant Anderson told the Plaintiff: *I have heard of your arrest of February, 4, 2002,* and threatened the Petitioner saying that: "**I will use my "higher authority and not some city clerks" to have you re-arrested and your house re-searched again in the present of the local newschannel 8 TV**". Plaintiff was scared to death, from Sergeant Anderson because he was acting ferocious and without control roaming in the Plaintiff's property with a loaded gun in holster. Plaintiff politely asked Sergeant *Anderson* told him: *I want you to leave, and to stop trespassing in my property and harassing me, please leave* Plaintiff told Sergeant *Anderson.* Plaintiff further reminded Sergeant *Anderson* that he was in violation of his commander, (PPB) Lieutenant *Myciag* whom upon moving in next door to the *Anderson*'s Plaintiff had made his first complaint against Sergeant *Anderson*'s harassment in August 2000. Lieutenant *Myciag* warned Sergeant *Anderson* to stop harassing the Plaintiff. In his phone conversation with the Plaintiff, Lieutenant *Myciag* told the Petitioner that: *if Sergeant Anderson continued to harass or bather you or your family, he will no longer be member of the (PPB).* Sergeant Anderson refused to leave the Petitioner's property and told Plaintiff: *I am not fucking scared of you,* and physically pushed the petitioner and his wife out of their house door way forcing himself into the their living room area and start

3

**CIVIL RIGHTS COMPLAINT-28 U.S.C §1350 VIENNA CONVENTION VIOLATION**

taking pictures of the petitioner's furniture with the 35 mm. camera he had in his hands. After Sergeant *Anderson* left, Plaintiff immediately called (PPB) and the Internal Affairs (IA) complaining about Sergeant Anderson's egregious behavior verbal profanity and physical abuse of him and his wife. Plaintiff told the (PPB) that Sergeant *Anderson* be arrested and charged with trespassing, invasion of privacy, verbal profanity and physical assault. Instead Plaintiff was sent a complaint form, which he completed and faxed it back to (PPB) in the same day. Sergeant Anderson later admits to using profanity on Plaintiff and his wife when he invaded their home on February 7, 2002. Prior to Sergeant Anderson incident in February 7, 2002, Plaintiff also have made several other complains against the Sergeant *Andersen* behavior.

When Sergeant *Anderson* was warned by his superior Lieutenant *Myciag*, not to harass the Petitioner any more, Sergeant *Anderson* used other *(officers) friends of his)*, the officers who allocated to patrol the Park Rose neighborhood at *mid*night shifts start to comes at mid-night and issue parking tickets to the Petitioner's cars parked in the Petitioner's driveway. Tickets issued were $100 for each ticket, these tickets mounted to $1000's. The same officer Mayer who had ticketed the Plaintiff's cars had also two weeks later towed two of the Plaintiff's vehicles from the Plaintiff's driveway, of course at midnight again while everyone was asleep writing two false towing report of the two vehicles, stating the vehicles were illegally parked with a tag problem. *How a parked vehicle in its owner's a private property driveway is illegally parked*? But Officer *Mayer* thought so when lied in his report and fabricated the story about the license plate and the sticker. When the Plaintiff had his hearing with the parking patrol officer the finding was that officer *Mayer* who towed the two vehicles acted improperly and the tow illegal,

and the Plaintiff was reimburse for the towing fees, but Plaintiff was never recovered for the emotional stress that caused by the intentional hazing, the lose of time and money Plaintiff lost during the ups and downs and the emotional stress..

While Plaintiff was out of custody, after his release from jail on February 7, 2002, on his own recognizance have not been in any trouble, "55 days later" and six days to his scheduled April 2, 2002, Court hearing, Sergeant Anderson threat of February 7, 2002, *I will use my "higher authority and not some city clerks" to have you re-arrested and your house re-searched again in the present of the local newschannel 8 TV"* was fulfilled. Just as he said. On April 2, 2002, the same (PPB) officers who had arrested the Plaintiff on February 4, 2002, accompanied with 15 other (PPB) Officers, Sergeants and staff from the district Office raided the Plaintiff house with the search warrant and the newschanneal 8 TV crew. Plaintiff was not home at the time, but his wife was, taking a shower at time when the Police officers threw the tear-gas-canister outside the yard and inside the house to scare the dogs off, yelling and pointing their guns at the naked woman (*Plaintiff's wife*). telling her: *Police drop down on the floor search warrant, Police drop down on the floor search warrant*, pointing guns at her while getting out of shower totally naked. The whole incident was witnessed by the nearby neighbors while is being video taped by KGW newschannel 8 TV. When Plaintiff come home later at abut 10:00 a.m. he found his house swarmed with nearly 10 police cars and the KGW newschannel 8 TV crew. He recognized Officer James Lawrence chopping out the Plaintiff's iron fence into peaces and loading it in a flatbed truck the police brought along with them and other officers inside his house. When Plaintiff approached Officer *Lawrence* he asked him: *What the hell are you doing destroying my*

5

*fence*. Officer *Lawrence* handed the Plaintiff a copy of search warrant: *There is a search warrant for your arrest and to search your house for receiving stolen property and identity theft* he said. *What property? and what identity theft?* Plaintiff asked. *You have been arrested for that on February 4, 2002, indicted and I was released on my own recognizance on February. 7, 2002, and for that I am waiting for my Court hearing on April 9th*. Plaintiff told Officer *Lawrence* that: *I have not received any stolen property beside the one I have already taken on February 4th and 6th*, Officer *Lawrence* then told the Plaintiff: *Then you re under arrest for probation violation now*. Plaintiff told Officer *Lawrence*: *I am not on any kind probation*. Officer *Lawrence* told the Plaintiff: *you are* "*now*". Plaintiff asked Officer *Lawrence*. *How I am in probation?* Pointing at *Bill Jeffrey* of Multnomah County Probation Dept officer whom Officer *Lawrence* brought along with him, was standing by him. Officer Lawrence told Plaintiff: *This is your probation officer.* Plaintiff was not on probation at the time nor was he on Probation during the prior arrest of February 4, 2002, or have any outstanding warrant. Plaintiff never saw this probation officer *Bill Jeffery* or knew that he was his probation officer. However, after Sergeant *Anderson* threatened the Plaintiff on February 7, 2002, stating that that he was going to use his higher authority to lock the Plaintiff up, on March 20, 2002 Officer *Bill Jeffery* sent a letter to the Plaintiff requesting to meet with him in his office. *Bill Jeffery* then told the Plaintiff that he had received a phone call from officer *Lawrence* and Sergeant *Anderson* of the (PPB) they wants me to check on your probation status. Plaintiff then explained and showed *Bill Jeffery* the probation document from the probation Dept stating that his probation: *was issued on July 17, 2000, for placing a stop payment on my own personal check to an auto mechanic shop, and the probation was terminated on*

*April 10, 2001, after the completion of a 80 hours of community service,* which was 357 day, or more then 11 months ago prior to his first initial arrest of February 4, 2002. *Bill Jeffery* told the Plaintiff that: *I know that* your probation your probation was expired upon the completion of your community services, and told the Plaintiff that he was okay: *don't worry about it*.

During the April 2, 2002 incident, Plaintiff tried to explain the same thing to Officer *Lawrence*. That information was no good or it did not matter to Officer *Lawrence*, because Officer Lawrence was intending to re-arrest the Plaintiff anyway. Officer Lawrence then handcuffed the Plaintiff and put him in a police car and told another officer to take him downtown, where Plaintiff set in jail and one week later was released from the custody with no probation violation filed against him, because Plaintiff was not on probation. While Plaintiff was out of custody awaiting his Court hearing of May 1, 2002, for trial of the February 4, 2002, charges, the Sergeant *Anderson* "higher authority" had the time to figure out to forge and reinstated the one year expired probation making it a violation against Plaintiff. On his appearance to Court on May 1st, 2002, Plaintiff was wrongfully convicted for the non existed probation or probation violation and was sentenced to two six months concurrent in the County jail. Plaintiff asked his Court appointed attorney *Steve Williams* to appeal the wrongful probation conviction, but his attorney never did file the appeal. After the 30 days allowed for filing an appeal has past, Plaintiff was informed by another inmate in the county jail that he could file a state *habeas corpus*, which Plaintiff did on his own. Plaintiff never heard of the direct appeal, state or federal habeas corpus, or post conviction before. However the state habeas petition the Plaintiff filed on his own was later dismissed as moot

because at the time Plaintiff has already served the six months time in jail and he was no longer in custody for that matter. Upon the completion of the County jail time, Plaintiff was again indicted and charged for the April 2, 2002, re-arrest with (2) counts of aggravated theft in the first degree, (5) counts of theft in the first degree and (9) counts of identity theft which the state were unable to prove these charges were occurred. Case No.02-0532939.

During the April 2nd, 2002 re-arrest (the arresting police officers, Sergeants) of the (PPB), and *Bill Jeffery* of the Multnomah County Probation Department who were present during the re-arrest did not informed or advised of the Plaintiff of his right to Consular under Article 36 to the Vienna Convention on Consular Relations (*Vienna Convention*). Again, during the prosecution by the distract attorney, the Plaintiff was not informed or advised of his right to Consular under Article 36 to the Vienna Convention on Consular Relations (*Vienna Convention*).

The Vienna Convention on Consular Relations requires the states and the government officers to notify a foreign national who has been arrested, imprisoned or taken into custody of his right to contact a consulate from his country of origin. Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36(b), 21 U.S.T. 77, 596 U.N.T.S. 261. Alleging that the law enforcement officers violated his rights under this treaty.

In this complaint, Plaintiff is not only seeking to "compensate damages "for violation of his International Rights, but also to deter the Portland Police Bureau (PPB) and the County of Multnomah County Law Enforcement Agencies or any other Law Enforcement Agency across the nation from committing the same violation". The United States has been a party to the Vienna Convention on Consular Relations (Vienna Convention), Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261, a multilateral treaty. Among other things, the Vienna

## CIVIL RIGHTS COMPLAINT-28 U.S.C §1350 VIENNA CONVENTION VIOLATION

Convention requires its member states to ensure that a foreign national charged with a violation of host country law knows that he or she has the right to contact an official representative of his or her native country for assistance with legal proceedings. Plaintiff asserts that this Court has jurisdiction of his claim under 28 U.S.C. 1331 and §1343(a) (3). (Federal question jurisdiction), 1332 (diversity jurisdiction), and 1350 (the Alien Tort Claims Act). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2284 and Rule of 65 of the Federal Rules of Civil procedure. The United States District Court in Oregon is an appropriate venue under 28 U.S.C Section §1391 (b) (2) because it is where the events giving rise to this claim occurred. Plaintiff's complaint relies on the Alien Tort Statute (ATS), 28 U.S.C. 1350, which establishes jurisdiction in the district courts over a civil action by an alien for a tort committed in violation of a treaty of the United States. In this complaint Plaintiff alleges that he is the victim of a tort committed in violation of a treaty of the United States--the Vienna Convention. Plaintiff's complaint relies on the Alien Tort Statute (ATS), 28 U.S.C. 1350, which establishes jurisdiction in the district courts over a civil action by an alien for a tort committed in violation of a treaty of the United States. Among other things, the Vienna Convention requires its member states (*countries*) to ensure that a foreign national charged with a violation of host country law knows that he or she has the right to contact an official representative of his/her native country for assistance with legal proceedings. Plaintiff seeks compensatory and punitive damages for the violation of his rights under Article 36 which led, to deprivation.

The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably inured by the conduct of the defendant unless this Court grants the declaratory relief which Plaintiff seeks

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting Plaintiff:

A declaration that the acts and omissions described herein violated plaint's rights under the under Article 36 to the Vienna Convention on Consular Relations (*Vienna Convention*).

Compensatory damages in the amount of eight million dollars $8,000,000.00 from the city of Portland, Oregon defendants, and four million dollars $4,000,000.00 from the Multnomah County, Oregon defendants

A jury trial on all issues triable by jury

Plaintiff costs in this suit and

Any additional relief this Court deems just proper, and equitable.

Please note that in this (*Vienna Convention*) claim, Plaintiff is not challenging his false arrest, illegal search and seizure or malicious prosecution as indicated above. In this particular claim Plaintiff is challenging the violation of his rights under Article 36 to the Vienna Convention on Consular Relations (*Vienna Convention*) only. Plaintiff is currently challenging his criminal conviction, false arrest, illegal search and seizure in separate claim, currently pending in this Court. See *MILAUDI KARBOAU, vs. JOHN R. KROGER*, Oregon Attorney General Case No: 11-274-JO.

DATED this 25th, day of May 2011.

Respectfully submitted

MILAUDI KARBOAU
1623 East J Street, suite #5 Tacoma, WA 98412

10